**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **ROSS DRESS FOR LESS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No. |
| | ) | |
| **v.** | ) | |
| | ) | |
| **100 OAKS PLAZA, LLC.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## COMPLAINT

---

Plaintiff Ross Dress for Less, Inc. ("ROSS" or "Plaintiff") brings this Complaint against 100 Oaks Plaza, Inc. ("100 Oaks" or "Defendant") and alleges as follows:

### I.       THE PARTIES

1.       ROSS is a corporation organized and existing under the laws of Virginia with its principal place of business in California.

2.       Plaintiff is informed and believes, and thereon alleges, that at all times, 100 Oaks was and now is a limited liability company organized and existing under the law of Delaware and doing business in Tennessee.

### II.       JURISDICTION AND VENUE

3.       This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332. Upon information and belief, complete diversity exists between Plaintiff and Defendants, as Plaintiff is a Virginia corporation with a principal place of business in California and upon information and belief, Defendant's sole member is not a citizen of either state. The amount in controversy exceeds

$75,000 exclusive of interest and costs.

4.      This Court has personal jurisdiction over Defendant as it has purposefully availed itself of the benefits of Tennessee by owning property in Tennessee and engaging in systematic and continuous business activities in Tennessee.

5.      Defendant 100 Oaks may be served with process via its registered agent United Agent Group at 205 Powell PL, Brentwood, TN 37027-7522.

6.      Venue is proper in the Middle District of Tennessee as 100 Oaks's property at issue is located in Nashville, Tennessee and Defendant's conduct at issue in this case occurred in Nashville, TN.

### III.      FACTS

7.      The One Hundred Oaks Mall is located in Nashville, Tennessee (the "Shopping Center). Plaintiff is a tenant at the Shopping Center. Plaintiff's current landlord is Defendant.

8.      On or about November 20, 2003, 100 Oaks. L.P., the previous owner of the Shopping Center, and Ross Stores, Inc. ("Ross Inc.") entered into a written lease (the "Lease") for retail space in the Shopping Center (the "Store"). A true and correct copy of relevant excerpts of the Lease is attached hereto as **Exhibit A**.

9.      As part of Lease, 100 Oaks L.P. covenanted to Ross Inc. that it would not permit "Prohibited Uses" in the Shopping Center, including but not limited to those referenced in Section 3.2.2, which states:

> Further Prohibited Uses. Landlord agrees that the Ross Prohibited Uses set forth in Section 3.2.1, the Rules and Regulations attached as Exhibit L and the "Landlord's Prohibited Uses" which are listed in Exhibit D (collectively, the "Prohibited Uses") shall not be permitted in the Shopping Center. Tenant agrees that it will not violate the Prohibited Uses.

10.     Exhibit D of the Lease provides a comprehensive list of Prohibited Uses including but not limited to the following:

2

"Non-retail Purposes (repairs, alterations, and offices incidental to retailing and banks and small loan offices, not being deemed non-retail)"

11.     The Prohibited Uses covenant was important to Ross Inc.'s decision to lease space for the Store in the Shopping Center and to meet 100 Oaks L.P.'s rent demand. Ross Inc. had to assume the risk that the Shopping Center provided the location, accessibility, visibility and tenant mix needed to attract customers to the Store. The Prohibited Uses incentivized Ross Inc. to take this risk by protecting Ross Inc. from non-retail tenants that create negative impacts such as reduced parking availability and a diminished retail shopping environment, which affects the Store's ability to attract and serve its customers.

12.     On or about December 23, 2003 100 Oaks L.P. and Ross Inc. recorded a Memorandum of Lease ("MOL") against all parcels in the Shopping Center ("MOL"). A true and correct copy of the recorded MOL is attached hereto as **Exhibit B**.

13.     The MOL recited the pertinent portion of Lease Section 3.2.2 set forth above, thus notifying all current and future owners, tenants and other parties in interest that Ross Inc.'s Lease contained Prohibited Uses.

14.     Thereafter, Defendant succeeded to the interest originally held by 100 Oaks L.P. as Shopping Center owner and Landlord under the Lease.

15.     On or about December 31, 2004 Ross Inc. assigned Tenants' interest under the Lease to its subsidiary, Plaintiff. Plaintiff continues to operate the Store pursuant to the Lease.

16.     The Lease subsequently underwent three amendments for the purpose of modifying and clarifying certain portions of the Lease. The Prohibited Uses covenant was not modified and remains in full force and effect.

17.     By letter dated March 18, 2024, Plaintiff wrote to Defendant concerning the premises

3

adjacent to its store, previously occupied by Burlington. Plaintiff confirmed that Defendant had leased the 85,000 square foot premises to Vanderbilt Health for non-retail use in violation of the Prohibited Uses. Plaintiff informed Defendant that this posed a serious threat to Plaintiff's business by segregating the Store from other retail stores in the Shopping Center and severely limiting available parking for Plaintiff's customers, thereby causing irreparable damage to Plaintiff's operation in the Shopping Center. A true and correct copy of the March 18, 2024 Letter is attached as **Exhibit C**.

18.     Defendant responded via letter on April 30, 2024, in which it mischaracterized the Lease by stating that there was no violation of the Prohibited Uses. A true and correct copy of the April 30, 2024 Letter is attached as **Exhibit D**.

19.     Plaintiff sent another letter, through counsel, on June 24, 2024 in which it demanded that Defendant cease and desist immediately from allowing medical, non-retail use in the former Burlington space and demanded a response by July 1, 2024. A true and correct copy of the June 24, 2024 Letter is attached as **Exhibit E**.

20.     Defendant did not respond to the June 24, 2024 letter. Plaintiff sent another letter on July 15, 2024 wherein Plaintiff served Defendant with a mediation notice under Lease Section 20.2.2, which requires mediation within twenty days of the mediation notice before commencing litigation. A true and correct copy of the July 15, 2024 Letter is attached as **Exhibit F**.

21.     Defendant did not take proper steps to mediate this matter within twenty days of the July 15, 2024 mediation notice.  Nevertheless, Plaintiff offered to mediate after the twenty day mediation period expired without prejudice to Plaintiff filing litigation regarding Defendant's breach of the Lease as described herein.

22.     At all times relevant to this complaint, Vanderbilt Health has been and is a non-retail user as described in the Prohibited Uses. Notwithstanding the Prohibited Uses in the Lease, Defendant

4

continues its commitment to lease Shopping center space to Vanderbilt Health in violation of the Prohibited Uses.

## I.     FIRST CAUSE OF ACTION

### (Injunction Against Defendant)

23.    Plaintiff refers to and incorporates by reference all preceding paragraphs of this Complaint as though set forth in full herein.

24.    Unless and until enjoined, Defendant will cause great and irreparable injury to Plaintiff by violating the Prohibited Uses. Plaintiff's leasehold estate constitutes an estate in unique real property, which estate includes Prohibited Uses. An injunction against Defendant's violation of the Prohibited Uses is necessary because damages for the loss of Plaintiff's unique real property rights may be difficult to ascertain and quantify, and may be subject to debate. Such damages may include lost profits, loss of good will, and loss of Plaintiff's customer base.

25.    Plaintiff has no plain, speedy and adequate remedy at law, and is threatened with irreparable harm due to Defendant's acts and omissions.

26.    Defendant had notice of the Prohibited Uses through the MOL. Furthermore, Defendant agreed to abide by the Prohibited Uses when purchasing the Shopping Center and assumed the obligations of Landlord under the Lease. Therefore, Defendant would suffer no prejudice from the court's issuance of injunctive relief.

27.    Accordingly, Plaintiff seeks injunctive relief enjoining Defendant and all its officers, agents, employees, contractors, representatives, and all persons and entities directly or indirectly acting in concert with or at the direction of Defendant, from violating the Prohibited Uses, including but not limited to proceeding with Defendant's lease for medical office or medical clinic use.

Wherefore, Plaintiff prays for judgement as hereafter set forth.

5

## IV.    SECOND CAUSE OF ACTION

### (Declaratory Relief Against Defendant)

28.    Plaintiff refers to and incorporates by reference all preceding paragraphs of this Complaint as though set forth in full herein.

29.    An actual controversy has arisen and now exists between Plaintiff and Defendant concerning the Prohibited Uses.

30.    Plaintiff contends that the Prohibited Uses prohibit Defendant from leasing or otherwise permitting certain portions of the Shopping Center, including without limitation the former Burlington store, to be used for non-retail purposes in violation of the Prohibited Uses.  Plaintiff further contends that Defendant's proposed use of the former Burlington store for medical offices or medical clinic violates the Prohibited Uses set forth in the Lease.  Defendant denies Plaintiff's contentions.

31.    A judicial determination is necessary and appropriate for Plaintiff to ascertain its rights against Defendants.

32. Wherefore, Plaintiff prays for judgement as hereafter set forth.

## V.    THIRD CAUSE OF ACTION

### (Breach of Lease Against Defendant)

33.    Plaintiff refers to and incorporates by reference all preceding paragraphs of this Complaint as though set forth in full herein.

34.    Plaintiff has performed all of the acts or conditions required of it under the Lease necessary to obtain relief, except those acts or conditions that have been waived, excused, or that Plaintiff was otherwise prevented from performing.

6

35.     Defendant's lease of the former Burlington store for medical offices or medical clinic breaches the Lease, or constitutes an anticipatory breach of the Lease.

36.     As a proximate cause of Defendant's breach of the Lease, Plaintiff has been damaged, according to proof at trial.

37.     Section 20.4.2 states that in an action between the parties in connection with the Lease the prevailing party shall be entitled to reasonable attorneys' fees and other costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.     That process be issued and served upon Defendant requiring it to answer this Complaint;

2.     That the Court issue a preliminary and permanent injunction prohibiting Defendant from violating the Prohibited Uses;

3.     That the Court issue a judicial declaration consistent with Plaintiff's positions set forth herein;

4.     That this Court enter judgment in favor of Plaintiff on all causes of action;

5.     That this Court order pre- and post-judgment interest at the maximum legal rate, as provided by the laws of Tennessee;

6.     That this Court order Defendants to pay Plaintiff's attorney's fees and costs incurred in this action as required in the Lease;

[INTENTIONALLY LEFT BLANK]

7. That this Court award Plaintiff any other relief this Court deems just and equitable.

Dated: September 16, 2024.

Respectfully submitted,

*/s/ Lucas A. Davidson*

Lucas A. Davidson, Esq., (TN BPR No. 29955)
John T. Baxter, Esq., (TN BPR No. 035405)
**BUCHALTER, A Professional Corporation**
1 Music Circle South, Suite 300
Nashville, TN 37203
Telephone: (629) 224-6603
Fax: (949) 720-0182
ldavidson@buchalter.com
jbaxter@buchalter.com

*Counsel for Plaintiff Ross Dress for Less, Inc.*